# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DALLAS SEABOLT, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>CITY OF MUSKOGEE and )<br>MARK RIDLEY, )<br>)<br>Defendants. ) | Case No. CIV-07-255-FHS |

## REPORT AND RECOMMENDATION REGARDING
## MOTION FOR SUMMARY JUDGMENT BY MARK RIDLEY

This is an action pursuant to 42 U.S.C. § 1983. The Plaintiff alleges he was detained beyond the lawful scope of a traffic stop so a canine sniff of his vehicle could be conducted, which resulted in the discovery of incriminating evidence, a conviction for possession of methamphetamine and a two-year period of imprisonment before his conviction was reversed by the Oklahoma Court of Criminal Appeals. The Defendant Mark Ridley seeks summary judgment; he contends he did not violate the Plaintiff's constitutional rights and that even if he did, he is entitled to qualified immunity from suit. He also contends by way of his supplemental motion that the Plaintiff's claims are barred by the statute of limitations. Pursuant to 28 U.S.C. § 636(b)(1)(B), the District Judge referred the Defendant Mark Ridley's Motion for Summary Judgment and Brief in Support [Docket No. 44] and the Defendant Mark Ridley's Supplemental Motion for Summary Judgment and Brief in Support [Docket No. 68] to the undersigned United States Magistrate Judge, who now recommends that Ridley's initial motion be denied and that his supplemental motion be granted.

## A. Background

On March 3, 2004, the Defendant Mark Ridley, a Muskogee police officer, stopped the Plaintiff for making a left turn without signaling. Ridley noticed that the Plaintiff appeared nervous and remembered seeing his car earlier in the day at a house suspected for drug activity, but had no other reason to suspect there were drugs in the car. The parties disagree as to the length of the traffic stop and exactly how Ridley conducted it. The Plaintiff claims Ridley called for a canine unit, which took at least twenty-five minutes to arrive, and that during this time, he talked with another officer instead of proceeding with the issuance of a warning. Ridley denies this and contends that he radioed for a canine unit to conduct a sniff while he was writing the Plaintiff a warning, and he was still completing the warning when the canine unit arrived within a few minutes of being called. In any event, the dog alerted to the presence of drugs which prompted the officers to search the Plaintiff's car and resulted in the discovery of a suitcase containing items commonly used to manufacture methamphetamine. The Plaintiff was thereupon arrested and charged with possession of methamphetamine. He challenged the admissibility of the evidence seized from his car but was ultimately convicted and sentenced to prison for forty-five years on September 23, 2004. The Plaintiff appealed and the Oklahoma Court of Criminal Appeals reversed his conviction, determining that the incriminating evidence was illegally seized under the Fourth Amendment and should have been suppressed because his detention at a routine traffic stop for twenty-five minutes was unsupported by a reasonable suspicion of criminal activity. *See Seabolt v. State*, 2006 OK CR 50, ¶¶ 9-11, 152 P.3d 235, 238-39. Noting there was

insufficient evidence remaining to support a conviction, the Court of Criminal Appeals ordered the case against the Plaintiff dismissed on December 15, 2006. The Plaintiff was released after almost three years of incarceration (including pretrial detention) and filed this federal civil rights action against Ridley and the City of Muskogee on August 20, 2007.

**B. Analysis**

Ridley contends he is entitled to summary judgment because: (i) the Plaintiff's constitutional rights were not violated by a canine sniff of his vehicle completed within the proper scope of a valid traffic stop; (ii) even if the Plaintiff's constitutional rights were violated, Ridley is entitled to qualified immunity on claims arising therefrom; and, (iii) the Plaintiff's claims arising herein are barred by the statute of limitations. The undersigned Magistrate Judge finds there are disputed questions of material fact as to whether the Plaintiff's constitutional rights were violated and whether Ridley is entitled to qualified immunity, and that summary judgment on those issues is therefore inappropriate. However, any Section 1983 claims asserted by the Plaintiff concerning illegal detention, illegal arrest or illegal seizure of evidence are barred by the statute of limitations, and summary judgment is therefore appropriate to that extent.

The main issue in this case is whether Ridley illegally detained the Plaintiff beyond the proper scope of a valid traffic stop in order to conduct a canine sniff of his vehicle for drugs. If so, then the search of the Plaintiff's vehicle, the discovery of contraband and the Plaintiff's subsequent arrest and conviction were all arguably unconstitutional. Ridley argues that the canine sniff occurred while he was processing the traffic stop and that the Plaintiff

was not detained in addition thereto in order to conduct the canine sniff. In support of this argument he has submitted, *inter alia*, an affidavit in which he claims that he called for the canine unit shortly after stopping the Plaintiff, that the canine unit arrived within ten minutes of the initial stop and that the canine sniff was conducted while he was processing the Plaintiff's written warning. Ridley further argues that a canine sniff of a vehicle during a routine traffic stop is constitutionally permissible without a reasonable suspicion of criminal activity, and specifically denies that he detained the Plaintiff upon any such suspicion.

The factual assertions made by Ridley in his affidavit in support of summary judgment *do* support the argument that he did not violate the Plaintiff's constitutional rights in conducting a canine sniff of his vehicle during the traffic stop. Generally, a canine sniff of a vehicle conducted during the lawful detention of a individual does not in and of itself violate that individual's constitutional rights. *See, e. g.*, *United States v. Morales-Zamora*, 914 F.2d 200, 203 (10th Cir. 1990) ("Because the defendants' vehicles were not detained beyond the measure of time required for the officer to complete his examination of the defendants' documents, the purpose for which we assume the defendants were lawfully detained, we hold that there was not a 'seizure' of the defendants' vehicles for purposes of facilitating the canine sniff."). But as Ridley himself admits, at least one very important factual assertion in his affidavit is at odds with previous testimony he has given, *i. e.*, Ridley testified at the preliminary hearing in the Plaintiff's criminal case that it took approximately twenty-five minutes for the canine unit to arrive. Inasmuch as the reasonableness of the length of a traffic stop "must be judged by examining both the length of the detention and

the manner in which it is carried out[,]" *see United States v. Holt*, 264 F.3d 1215, 1230 (10th Cir. 2001); *see also United States v. Sharpe,* 470 U.S. 675, 686 (1985) ("In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.") [citations omitted], Ridley's prior testimony raises a factual question as to whether the Plaintiff was detained longer than reasonably necessary to process the traffic stop. *See, e. g., Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."). *See generally United States v. Rosborough*, 366 F.3d 1145, 1148 (10th Cir. 2004) ("[A] law enforcement officer may generally request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings as appropriate.") [citation omitted]. For example, one inference that can be drawn from the "twenty-five minute scenario" is that Ridley prolonged an otherwise routine traffic stop in order to allow the canine unit to arrive and complete the canine sniff. Absent a reasonable suspicion of criminal activity, this clearly would amount to a violation of the Plaintiff's constitutional rights, *see, e. g., United States v. Williams*, 271 F.3d 1262, 1270 (10th Cir. 2001), *cert. denied*, 535 U.S. 1019 (2002) ("[D]etention for the purpose of the canine drug sniff was justified only if the officer had reasonable suspicion that Mr. Williams was transporting drugs."), *citing United States v. Jones*, 44 F.3d 860, 872 (10th Cir. 1995), as the Court of

Criminal Appeals found in reversing the Plaintiff's conviction and ordering the charges dismissed. *See Seabolt,* 2006 OK CR 50, ¶ 12, 152 P.3d at 239.[1]

Assuming *arguendo* that Ridley's own differing accounts of the incident do not themselves create a material question of fact as to the violation of the Plaintiff's constitutional rights, the Plaintiff's account clearly does. In his affidavit in opposition to summary judgment, the Plaintiff claims that he waited ten minutes after the initial traffic stop before getting out of his car to ask Ridley about the delay. The Plaintiff claims he was told to get back into the car, after which he waited another fifteen minutes while Ridley and another officer stood talking near his car. The Plaintiff also claims that it took from thirty to thirty-five minutes after the initial stop for the canine unit to finally arrive. Thus, the Plaintiff's account essentially confirms Ridley's testimony at the preliminary hearing.[2] As

---

[1] The decision of the Court of Criminal Appeals is not entitled to any preclusive effect herein. *See, e. g., Novitsky v. Aurora*, 491 F.3d 1244, 1252 n.2 (10th Cir. 2007) ("[A] court's conclusion during a criminal prosecution that a law enforcement officer's conduct was unconstitutional is not afforded collateral estoppel effect in a subsequent civil case against the officer because there is no privity between the prosecution in the criminal case and the officer. Thus, Mr. Novitsky must establish anew that the officers violated his constitutional rights in this § 1983 action.") [internal citations omitted]. It does, however, illustrate the disputed nature of at least two issues: (i) how long it took the canine unit to reach the scene; and, (ii) whether such delay (however long it was) was reasonable under the totality of the circumstances.

[2] Ridley asserts in his reply brief that an exhibit he submitted in support of summary judgment is "irrefutable evidence" that his latest version of the facts is true as to the time it took the canine unit to arrive at the scene, and that the Plaintiff's contrary testimony is somehow legally insufficient to rebut this testimony. Ridley contends that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* ___ U. S. ___ , 127 S. Ct. 1769, 1776 (2007). But his reliance on *Scott* is tenuous at best. In that case, the Supreme Court determined that testimony which contradicted a videotape of the plaintiff's encounter with police was so inherently incredible that no reasonable jury could believe it. *Id.* at 1775 ("There is, however, an added wrinkle in this case: existence in the record of a videotape capturing the events in question. There are no allegations or indications

discussed above, a twenty-five minute detention for a traffic stop *does* raise a material factual question as to whether the Plaintiff was unreasonably detained in order to conduct a canine sniff of his vehicle. Summary judgment in favor of Ridley on this basis is therefore inappropriate.

Ridley also contends he is entitled to qualified immunity on any constitutional claim the Plaintiff asserts herein. In determining whether a defendant is entitled to qualified immunity, "the plaintiff bears the initial burden of proving that: (1) the officer's actions violated a constitutional right, and (2) this right was clearly established at the time of the conduct at issue." *Amundsen v. Jones*, 533 F.3d 1192, 1198 (10th Cir. 2008), *citing Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). The undersigned Magistrate Judge finds that the Plaintiff has met his burden. As discussed above, the Plaintiff's affidavit in opposition to summary judgment (and Ridley's prior testimony at the preliminary hearing in the Plaintiff's criminal case) makes out a *prima facie* case that his constitutional rights were violated when Ridley conducted the canine sniff of his vehicle. Further, the constitutional right in question was clearly established at the time of this incident, *i. e.*, it was well-established even then that in order to conduct a canine sniff of a vehicle stopped for a traffic violation, there must be a reasonable suspicion of criminal activity or the canine sniff

that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened. The videotape quite clearly contradicts the version of the story told by respondent[.]"). *Scott* is thus inapposite to this case; the Plaintiff's account of the facts is neither so inherently incredible that no reasonable jury could believe it nor blatantly contradicted by the record. On the contrary, as discussed above, the Plaintiff's account is reasonably consistent with Ridley's *original* account of the facts.

must occur within the proper scope of the initial traffic stop. *See, e. g., Morales-Zamora*, 914 F.2d at 203 (a canine sniff of a vehicle is a "seizure" if the detention goes "beyond the measure of time required for the officer to complete [the stop.]"). Thus, Ridley is not entitled to summary judgment on the basis of qualified immunity unless he can demonstrate "'that there are no genuine issues of material fact and that he . . . is entitled to judgment as a matter of law.'" *Amundsen*, 533 F.3d at 1198, *quoting Nelson*, 207 F.3d at 1206.

As discussed above, there clearly is at least one question of material fact regarding the alleged violation of the Plaintiff's constitutional rights. Further, although Ridley argues that those rights were not clearly established, *i. e.*, "that a reasonable person in the defendant's position would [not] have known that his conduct violated that right[,]" *Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir. 2003) [citations omitted], the factual assertions in his affidavit in support of summary judgment refute this argument. For example, Ridley admits he was aware (based upon his training and experience ) that a canine sniff of a vehicle during the scope of a traffic stop was constitutionally permissible, but specifically denies detaining the Plaintiff beyond the scope of the initial traffic stop in order to conduct a canine sniff of his vehicle based upon a reasonable suspicion of criminal activity.[3] At the very least this

---

[3] A reasonable suspicion of criminal activity justifies detaining a suspect beyond the proper scope of an initial traffic stop for further investigation such as a canine sniff of a stopped vehicle. *See, e. g., United States v. Villa-Chaparro*, 115 F.3d 797, 802-03 (10th Cir.), *cert. denied*, 522 U.S. 926 (1997) (finding that a thirty-eight minute wait for canine unit was reasonable based upon officer's reasonable suspicion). Ridley could arguably assert there was a reasonable suspicion of criminal activity justifying detention of the Plaintiff for the canine sniff even though he now denies that this is what he did. *See, e. g., United States v. Sanchez*, 89 F.3d 715, 717-18 (10th Cir. 1996) (noting that under the Fourth Amendment protection from unreasonable searches and seizures, "[t]he proper inquiry is an objective one . . . The subjective intentions or state of mind of either the defendant or police is irrelevant to Fourth Amendment analysis.") [citations omitted]. But based on

raises a material factual question as to whether "a reasonable person in [Ridley's] position would have known that his conduct violated [the Plaintiff's constitutional] right." *Id*. Summary judgment in favor of Ridley on the basis of qualified immunity is therefore inappropriate. *See, e. g., Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) ("When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be 'properly denied.'"), *citing Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir. 1991).

With regard to the statute of limitations, the undersigned Magistrate Judge has previously recommended that the Defendant City of Muskogee's Motion for Summary Judgment and Brief in Support [Docket No. 18] be granted as to any Section 1983 claims arising from any illegal detention, illegal seizure of evidence or illegal arrest, but denied as to any claim arising from an illegal conviction, which is analogous to a common law malicious prosecution claim. *See, e. g., Wilkins v. DeReyes,* 528 F.3d 790, 797 (10th Cir. 2008) ("The common law elements of malicious prosecution are the 'starting point' for our analysis of a § 1983 malicious prosecution claims."), *citing Pierce v. Gilchrist,* 359 F.3d

---

the totality of the circumstances, *i. e.*, the Plaintiff's nervousness and the fact that his vehicle was seen at a suspected drug house approximately thirty minutes prior to the traffic stop, a reasonable suspicion of criminal activity does not appear to have existed in this case. *See, e. g., United States v. Santos*, 403 F.3d 1120, 1127 (10th Cir. 2005) (nervousness "may be considered as part of the totality of circumstances a reasonable law enforcement officer would analyze in investigating possible crimes [but] unless it is unusually severe or persistent, or accompanied by other, more probative, grounds for reasonable suspicion, it is of limited significance in determining whether reasonable suspicion exists.") [internal quotation marks and quotation omitted]; *United States v. Soto-Cervantes*, 138 F.3d 1319, 1323 (10th Cir.), *cert. denied*, 525 U.S. 853 (1998) ("[T]he fact that an individual is in a neighborhood known for drug activity is not sufficient by itself to support a reasonable suspicion that the individual himself is engaged in criminal activity[.]"), *citing Brown v. Texas*, 443 U.S. 47, 52 (1979).

1279, 1285-86 (10th Cir. 2004). The latter recommendation was based upon the allegations in the Plaintiff's complaint that his "conviction was improper," that he "should not have served 1,092 days in prison[,]" that he was deprived of things he "would have been able to do if he had not been wrongfully incarcerated" and that he suffered damages "[a]s a result of being placed in prison[.]" *See, e. g., Heck v. Humphrey,* 512 U. S. 477, 484 (1994) ("The common-law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process."). Despite these allegations, Ridley contends he is entitled to summary judgment on all claims in his Supplemental Motion for Summary Judgment and Brief in Support [Docket No. 68] because the Plaintiff has never asserted any Section 1983 claim for illegal conviction or malicious prosecution.

Ridley argues there is no Section 1983 claim for malicious prosecution asserted in this case primarily because the Plaintiff's complaint does not specifically mention "malicious prosecution" or "illegal conviction." But the failure to utilize such common law terminology is not fatal to analogous constitutional claims under Section 1983. *See, e. g., Mondragon v. Thompson,* 519 F.3d 1078, 1084 n.7 (10th Cir. 2008) ("The complaint does not explicitly plead a claim of malicious prosecution, *though it pleads facts that could support such a claim.* As we held in *Pierce*, however, it is not essential that the plaintiff use the words 'malicious prosecution' to describe his due process claim: Plaintiff's actual cause of action is for a constitutional violation under § 1983; the common law tort of malicious prosecution

is relevant only as an analogy that is helpful in structuring the legal analysis. Plaintiff's failure to plead malicious prosecution as a cause of action is therefore not fatal to his action.") [emphasis added], *citing Pierce*, 359 F.3d at 1286 n.3 ("Ms. Gilchrist also complains that the amended complaint did not allege a claim for malicious prosecution, and that the district court therefore erred when it 'unilaterally injected the claim of malicious prosecution' in its order of October 23, 2002.  However . . . Plaintiff's actual cause of action is for a constitutional violation under § 1983; the common law tort of malicious prosecution is relevant only as an analogy that is helpful in structuring the legal analysis. Plaintiff's failure to plead malicious prosecution as a cause of action is therefore not fatal to his action.") [citation to record omitted].  As discussed above, the Plaintiff's complaint *does* contain allegations focused particularly upon his incarceration, and upon the reversal by the Court of Criminal Appeals because his "conviction was improper."  Such allegations would be relevant *only* to a Section 1983 claim for malicious prosecution.  *See, e. g., Wallace v. Kato,* ___ U. S. ___ , 127 S. Ct. 1091, 1096 (2007) ("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.  From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself.") [quotation marks omitted], *quoting* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Law of Torts* § 119, pp. 885-886 (5th ed. 1984).  *See also Heck,* 512 U. S. at 486-87 ("[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a

conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]"). Ridley also focuses upon the absence of similar terminology in the Agreed Pretrial Order submitted to the Court, but *every* item of damages identified by the Plaintiff therein arises out of his incarceration. Thus, whatever criticism may be leveled against the Plaintiff for the characterization of his claim, it seems fairly clear that he is seeking damages for having been wrongfully convicted and incarcerated at the behest of the Defendants. Such a claim under Section 1983 is clearly analogous to a common law claim for malicious prosecution, *see Wilkins,* 528 F.3d at 797, *citing Pierce,* 359 F.3d at 1285-86, the failure to properly name it notwithstanding. *See Mondragon,* 519 F.3d at 1084 n.7 ("[I]t is not essential that the plaintiff use the words 'malicious prosecution' to describe his due process claim: Plaintiff's actual cause of action is for a constitutional violation under § 1983; the common law tort of malicious prosecution is relevant only as an analogy that is helpful in structuring the legal analysis. Plaintiff's failure to plead malicious prosecution as a cause of action is therefore not fatal to his action."), *citing Pierce*, 359 F.3d at 1286 n.3 ("Plaintiff's actual cause of action is for a constitutional violation under § 1983; the common law tort of malicious prosecution is relevant only as an analogy that is helpful in structuring the legal analysis. Plaintiff's failure to plead malicious prosecution as a cause of action is therefore not fatal to his action.").

Neither of the Defendants have otherwise challenged the sufficiency of the Plaintiff's allegations to support a Section 1983 claim for malicious prosecution. Nevertheless, the Plaintiff's complaint would appear to be implausible on its face as to any Section 1983 claim for malicious prosecution and would therefore be subject to dismissal despite giving the Defendants adequate notice that such a claim was asserted. *See Bell Atlantic Corp. v. Twombly*, ___ U.S. ___ , 127 S. Ct. 1955, 1974 (2007) (complaint must plead "enough facts to state a claim to relief that is plausible on its face."). The Plaintiff alleges that Ridley arrested him without a warrant and without probable cause, *i. e.*, that the evidence establishing probable cause for his arrest during the traffic stop was illegally seized because Ridley illegally detained him for the canine sniff that resulted in the discovery of the evidence. Such allegations can lay the groundwork for a Section 1983 claim for malicious prosecution. *See Wilkins,* 528 F.3d at 798 ("If arrested without a warrant-and thus triggering the Fourth Amendment require[ment of] a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest-a plaintiff can challenge the probable cause determination made during the constitutionally-required probable cause hearing.") [internal quotations omitted], *citing Reed v. City of Chicago,* 77 F.3d 1049, 1053 (7th Cir. 1996) ("It is conceivable that a wrongful arrest could be the first step towards a malicious prosecution."). But something more than an illegal arrest is required to support a Section 1983 claim for malicious prosecution against a police officer. *See Reed,* 77 F.3d at 1053 ("[T]here were no allegations that the detectives committed any improper acts after arresting Reed without probable cause. We fail to see how this is malicious prosecution.").

The Plaintiff *does* allege that Ridley gave false testimony during his criminal trial, although he has never specified what the false testimony was or offered any evidence to support this allegation. But this would clearly not give rise to any claim under Section 1983 in any event. *See Briscoe v. LaHue,* 460 U.S. 325, 341-45 (1983) ("Petitioners . . . urge that we should carve out an exception to the general rule of immunity in cases of alleged perjury by police officer witnesses . . . But our cases clearly indicate that immunity analysis rests on functional categories, not on the status of the defendant . . . In short, the rationale of our prior absolute immunity cases governs the disposition of this case."). Absent allegations (and supporting evidence) of any other wrongdoing by Ridley, such as suppressing exculpatory evidence or providing false information to the prosecutor who filed the charges against the Plaintiff, the Plaintiff has failed to properly plead (and presumably cannot prove) a Section 1983 claim for malicious prosecution in this case. *See Reed,* 77 F.3d at 1053 ("At bottom, we have an allegation that the defendants lacked probable cause to arrest Reed and charge him with murder. That is a claim for wrongful arrest . . . Reed made no allegations in the complaint that the detectives falsified any information or evidence. He did not allege that they discovered exculpatory evidence but withheld it from him . . . It is conceivable that a wrongful arrest could be the first step towards a malicious prosecution. However, the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor.") [citation omitted]. As is discussed above, all his other claims are barred by the statute of limitations. Ridley is therefore entitled to summary judgment on this basis, and the

Defendant Mark Ridley's Supplemental Motion for Summary Judgment and Brief in Support [Docket No. 68] should be in all things granted.[4]

The Plaintiff's failure to properly assert a Section 1983 claim for malicious prosecution was not raised in the Defendant City of Muskogee's Motion for Summary Judgment and Brief in Support [Docket No. 18], although there was a generalized contention that the Plaintiff's claims were "not subject to the tolling principles of *Heck*, because this claim is not based on allegations that would call into question the validity of Plaintiff's conviction and sentence." The City of Muskogee has, however, subsequently raised the issue in its Objection to Report and Recommendation Regarding Motion for Summary Judgment by City of Muskogee [Docket No. 67]. The undersigned Magistrate Judge's conclusion that all claims properly asserted herein against Ridley are barred by the statute of limitations would thus now apply to the City of Muskogee as well. Consequently, if the Court is inclined to grant summary judgment on all claims herein to Ridley on the basis of the statue of limitations, it should do the same with regard to the City of Muskogee.

### C. Conclusion

In summary, the Defendant Mark Ridley's Motion for Summary Judgment and Brief in Support [Docket No. 44] should be in all things denied because there are disputed issues of material fact regarding the alleged violation by Ridley of the Plaintiff's constitutional

---

[4] If the Court accepts this recommendation and grants in all things the Defendant Mark Ridley's Supplemental Motion for Summary Judgment and Brief in Support [Docket No. 68], the Court could decline to address the Defendant Mark Ridley's Motion for Summary Judgment and Brief in Support [Docket No. 44] on the merits and simply deny it as moot.

rights and the availability to Ridley of the qualified immunity defense. However, the Defendant Mark Ridley's Supplemental Motion for Summary Judgment and Brief in Support [Docket No. 68] should be granted because all Section 1983 claims properly asserted herein are barred by the statute of limitations. Accordingly, pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned United States Magistrate Judge hereby PROPOSES the findings set forth above and accordingly RECOMMENDS that the Defendant Mark Ridley's Motion for Summary Judgment and Brief in Support [Docket No. 44] be in all things denied, but that the Defendant Mark Ridley's Supplemental Motion for Summary Judgment and Brief in Support [Docket No. 68] be in all things granted. If there are any objections to this Report and Recommendation, they must be filed with the Clerk of Court within ten days of service hereof. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).

**DATED** this 24th day of September, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**